This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Alice Bunting, appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her two children and granted permanent custody to the Wayne County Children Services Board ("CSB"). This Court affirms.
 I.
CSB initially became involved with Bunting's two children, David, born September 6, 1989, and Celia, born August 19, 1991, following allegations that Bunting's now-deceased husband, the father of both children, had physically abused David. Following her husband's death, Bunting sought help from CSB and voluntarily placed her children in CSB custody. CSB commenced involuntary proceedings in December 1998 after Bunting entered a residential program for treatment of her addiction to heroin.
Psychological assessments of Bunting revealed that she had adjustment disorder with anxiety and depression, dependent personality disorder, and neurological difficulties from a previous automobile accident. Bunting had apparently been self-medicating with drugs and alcohol, and the problem escalated after the death of her husband. According to the psychologist who diagnosed Bunting, drugs and alcohol amplified her psychological difficulties, "creating considerably more confusion, inability to think clearly, [or] make good judgments." Psychological assessments of Celia and David revealed that they had their own psychological and behavioral problems that needed to be addressed.
CSB's case planning efforts focused on addressing the children's behavior problems, Bunting's substance abuse and mental health issues, and Bunting's parenting skills, with particular attention focused on setting appropriate boundaries for the children. Through counseling and other services, the children made some progress in controlling their inappropriate behavior. Bunting attended some drug treatment and counseling sessions, but was not able to achieve sobriety during the next two years. Professionals who worked with Bunting opined that she still needed to complete a residential substance abuse treatment program, but she was apparently unwilling to do that. One of Bunting's therapists noted that Bunting seemed to understand her problem with substance abuse, but was unable to apply what she had learned.
On April 10, 2000, CSB moved for permanent custody of both children. Although the date for a permanent custody hearing was set, it was continued once due to the health of one of the state's witnesses and twice due to Bunting's health. The permanent custody hearing was held on December 14 and 15, 2000. The trial court granted CSB permanent custody of both children.
Bunting appeals and raises seven assignments of error, some of which will be consolidated or addressed out of order for ease of discussion.[1]
 II. Assignment of Error I THE COURT ABUSED ITS DISCRETION BY NOT REQUIRING THE GUARDIAN AD LITEM TO COMPLY WITH OHIO REVISED CODE 2151.414(C), AND IN A MANNER NOT ALLOWING FOR OBJECTION, THUS VIOLATING ALICE BUNTING'S DUE PROCESS RIGHTS.
 R.C. 2151.414(C) requires the guardian ad litem to submit a written report to the court "prior to or at the time of the [permanent custody] hearing[.]" Bunting contends that her due process rights were violated because the guardian ad litem did not file his report about Celia until after the hearing on CSB's motion for permanent custody and apparently never filed one in David's case, as none appears in the record.
The record reveals that the guardian ad litem filed a preliminary report on each child before the permanent custody hearing, indicating that "[u]nless the evidence and testimony proves otherwise, based on my knowledge of the circumstances in this matter," he did not believe that returning either child to Bunting's custody would be in the child's best interest. At the permanent custody hearing, the trial court granted the guardian ad litem until December 22 to submit a final written report. Bunting not only failed to raise any objection to that time extension, she consented to it. Moreover, when Bunting submitted her closing arguments on January 12, 2001, she made no mention of the guardian adlitem's failure to timely file a report on either child. Because Bunting did not raise a timely objection in the trial court to any failure by the guardian ad litem to comply with the requirements of R.C. 2151.414(C), she has not preserved the issue for appellate review. See In re Fox
(Sept. 27, 2000), Wayne App. Nos. 00CA0038, 00CA0039, 00CA0040, and 00CA0041, unreported; In re Benoit (Nov. 2, 2000), Cuyahoga App. No. 76128, unreported. Consequently, Bunting's first assignment of error is overruled.
 Assignment of Error II THE SELF-CANCELLING PROVISIONS OF OHIO REVISED CODE 2151.414(A)(2) ARE UNCONSTITUTIONAL ON THEIR FACE AND AS APPLIED BECAUSE THEY RENDER DUE PROCESS ILLUSORY.
 Assignment of Error IV OHIO REVISED CODE 2151.414(C) IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED BECAUSE IT REQUIRES A COURT OF LAW TO DELIBERATELY REFUSE TO CONSIDER THE DEPRIVATION OF A FUNDAMENTAL RIGHT GRANTED TO PARENTS AND CHILDREN BY THE UNITED STATES CONSTITUTION. IT THUS VIOLATES THE 14TH AND 9TH AMENDMENTS.
 Assignment of Error VII OHIO REVISED CODE 2151.04, 2151353, AND 2151.414 WERE UNCONSTITUTIONALLY APPLIED IN THIS CASE.
 Through these assigned errors, Bunting raises constitutional challenges to R.C. 2151.414, 2151.04, and 2151.353. She did not assert any of these challenges in the trial court, however. Generally, an appellate court will not consider any error that could have been, but was not, called to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus. Specifically, the "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986), 22 Ohio St.3d 120, syllabus.
Because Bunting did not raise any of these constitutional challenges below, this Court will not consider them now. The second, fourth, and seventh assignments of error are overruled.
 Assignment of Error VI THE DECISION OF THE LOWER COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THAT EVIDENCE IS FAR FROM CLEAR AND CONVINCING THAT THERE IS "NO SIGNIFICANT AND POSITIVE RELATIONSHIP" BETWEEN ALICE AND CELIA BUNTING SUCH TO REQUIRE TERMINATION OF EVEN RESIDUAL RIGHTS.
 Through this assignment of error, Bunting asserts, essentially, that the trial court erred in awarding CSB permanent custody of her children because it should have instead placed the children in a planned permanent living arrangement "PPLA") so that Bunting could have retained residual parental rights. Bunting's argument fails for numerous reasons.
R.C. 2151.353(A)(5) provides that, as an alternative disposition to placing the children in the permanent custody of a children services agency, the trial court "may" place the children in a PPLA only if:
(1) the agency requests such a placement, and
(2) "the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child," and
(3) that one of three enumerated situations was present. The only enumerated situation that was even arguably relevant here was that listed in R.C. 2151.353(A)(5)(b):
 The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414
[2151.41.4] of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
 Bunting focuses most of her argument on whether the evidence established that Celia and David retained a "significant and positive relationship" with her. Even if the evidence did establish that Bunting maintained such a relationship with her children, none of the other requirements for a PPLA placement were satisfied.First, there is nothing in the record to suggest that the agency ever requested such a placement. There was also no evidence presented, much less clear and convincing, to establish any of the other statutory requirements: that a PPLA placement would be in the children's best interests; that Bunting was unable to care for her children due to her psychological problems, as opposed to her problem with substance abuse; or that adoption was not in the children's best interests. Therefore, the trial court did not even have the authority to make a PPLA placement. See 2151.353(A)(5) (the trial court "may" make a PPLA placement only "if" certain statutory requirements are met); In the matter of Dixon (Apr. 24, 1998), Clark App. Nos. 97-CA-0027 and 97-CA- 0028, unreported. Consequently, the trial court committed no error by failing to place the children in a planned permanent living arrangement.
This Court will now determine whether the trial court erred in granting CSB permanent custody of both children. Pursuant to R.C.2151.414(B)(1)(d), the juvenile court may grant permanent custody to the agency upon two findings: (1) that the children had been in the temporary custody of an appropriate agency "for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999[,]" and (2) that it is in the best interest of the children.
 For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.
 R.C. 2151.414(B)(1). The evidence before the trial court demonstrated that the children were adjudicated dependent on December 21, 1998.[2] By the time of the permanent custody hearing on December 14 and 15, 2000, the children had been in the temporary custody of CSB for the entire twenty-two months of the prior consecutive twenty-two month period.
The best interest determination is governed by R.C. 2151.414(D), which provides, in relevant part:
 In determining the best interest of a child * * * the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]
 The trial court had before it evidence that each of the children has behavioral problems, including inappropriate sexual behavior such as masturbating at school in front of others. One of David's counselors testified that David's problems are "in the severe category" compared to other children his age. That same counselor indicated that whoever cares for David needs training and assistance. He noted that David's foster parents had been trained, but that even they found David very challenging at times. Another counselor testified that David had been making progress with his foster parents and had become more stable. David had been with the same foster family during the entire two years prior to the hearing. Celia, although placed separately from David, had also been with the same foster family for two years and was also showing improvement with her behavioral problems.
The trial court interviewed Celia in camera. She briefly indicated to the court that she wanted to go home to live with her mother. She offered no further explanation and, according to the trial judge's observation, her testimony was not emotional. The trial judge did not interview David. Although no explanation was offered at the time of thein camera interview process, one of David's counselors later testified that David did not have the emotional maturity to decide where he wanted to live. Although Bunting suggests in her brief that there is evidence in the record to demonstrate David's attachment to his mother, no such evidence was before the trial court. Bunting cites to an apparent letter from CSB that is not in the record and, even if it were, by her own citation, the letter was written after the trial court's final judgment.
The children's relationship with their mother had been limited during the two years prior to the hearing. Although Bunting had weekly visits with her children for much of that time, the lengths of her visits were shortened and visitation was even suspended for a time due to concerns for the safety of children and CSB workers involved in the visitations. During one visit, Bunting attempted to flee with the children and the police had to intervene. Bunting had threatened a CSB worker and had been hospitalized twice on an involuntary basis due to concerns of a clinical counselor that Bunting was a threat to herself or others.
By her own admission to counselors and her CSB caseworker, Bunting continued to abuse drugs and alcohol on a regular basis. She was not willing to complete a residential treatment program that experts had opined was necessary for her to control her addiction. According to the testimony of both the CSB case worker and one of Bunting's friends, Bunting attended one of her visits with the children and appeared to be under the influence of alcohol. Bunting's own friend, who came to the hearing to testify on her behalf, indicated that she would have concerns about leaving the children alone with Bunting due to the "alcohol business." Bunting's counselor testified that Bunting's continued use of drugs and alcohol poses a risk to her children.
The trial court had substantial evidence before it from which it could conclude that permanent custody to CSB was in the children's best interests. Bunting's sixth assignment of error is overruled.
 Assignment of Error III THE TRIAL COURT ABUSED ITS DISCRETION BY NOT SUFFICIENTLY CONSIDERING THE PREFERENCE OF CELIA BUNTING TO RETURN TO HER MOTHER'S HOME, THEREBY VIOLATING THE FUNDAMENTAL RIGHTS OF ALICE BUNTING UNDER THE FOURTEENTH AND NINTH AMENDMENTS TO THE U.S. CONSTITUTION.
 Bunting contends that the trial court did not place enough weight on Celia's expressed desire to return to her mother's home. The trial court interviewed Celia in camera just before the permanent custody hearing. That interview, in relevant part, revealed the following:
 Q:* * * I was asked to talk to you. People thought maybe you had something you wanted to tell me. Is there anything you want to tell me?
A: Yeah. I want to go home.
Q: Okay. And what do you mean by going home?
A: I want to go home with my mommy.
* * *
 Q: Okay, I understand you say you want to go home with your mom?
A: (no verbal response)
Q: Any reason? What are your reasons?
A: I just want to go home with my mom.
Q: Okay. Anything else you want to tell me?
A: Huh-uh.
 As explained in this Court's discussion of Bunting's sixth assignment of error, the wishes of the child are to be considered when the trial court makes its best interest determination and the trial court indicated in it decision that it did consider Celia's expressed desire to live with her mother. The child's wishes are just one of the factors the court must consider, however. See R.C. 2151.414(D). The statute requires the trial court to consider all relevant factors and does not assign particular weight to any factor. In re Williams (Sept. 15, 2000), Montgomery App. No. 18217, unreported. As explained above, the trial court considered all relevant aspects of the children's lives to determine what was in their best interests. See id. This Court found no error in the trial court's conclusion that permanent custody to CSB was in the best interest of Celia and David Bunting.
As always, "the weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Celia merely said that she "just want[ed] to go home[,]" with no explanation of her reasons. The trial court, having had the opportunity that this Court does not have to observe Celia's demeanor, noted that her testimony was given with little emotion.
Because Bunting has failed to demonstrate that the trial court did not adequately consider the wishes of Celia, her third assignment of error is overruled.
 Assignment of Error V THE JUVENILE COURT ABUSED ITS DISCRETION AND COMMITTED CLEAR ERROR, PREJUDICING THE FUNDAMENTAL DUE PROCESS RIGHTS OF ALICE BUNTING, WHEN IT REFUSED TO ADMIT EXPERT OPINION ON THE NECESSITY TO TERMINATE PARENTAL RIGHTS.
 Bunting contends that the trial court committed reversible error, amounting to a denial of due process, when it sustained the state's objection to the following cross-examination question that Bunting posed to Dr. Marianne Bowden, a psychiatrist who testified for the state:
 Q: So it would not be necessary to terminate Mrs. Bunting's parental rights solely for the purpose of benefiting the children, is that a fair statement?
 Bunting cannot predicate error on the exclusion of evidence, however, unless she can demonstrate that she was prejudiced as a result. Evid.R. 103(A). Even if Dr. Bowden had been permitted to answer, and assuming that her answer would have been "No,"[3] Bunting has failed to even argue, much less demonstrate, how that evidence would have affected the outcome of this case. Bunting's argument once again seems to presume that the state was required to prove that termination of Bunting's parental rights was "necessary" to protect the children, i.e. that there were no other dispositional options. As explained in this court's discussion of Bunting's sixth assignment of error, the state was not required to prove that termination of Bunting's parental rights was "necessary," only that it was in the children's best interests. Bunting's fifth assignment of error is overruled.
 III.
Bunting's assignments of error are overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for these appeals.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
______________________________________ WILLIAM R. BAIRD
BAIRD, P.J., SLABY, J. CONCURS.
[1] Bunting filed two separate appeals and submitted slightly different briefs in each case. The appeals were later consolidated, however, and the briefs are virtually identical except that Celia's case includes an additional assigned error and the assigned errors are numbered differently. Consequently, this Court will address the errors assigned in the brief Bunting submitted in her appeal from Celia's case, which will fully encompass all the errors and arguments that she has raised in both briefs.
[2] Because the children were initially placed in CSB custody pursuant to a voluntary agreement with Bunting, "removal" did not occur until December of 1998 when involuntary proceedings commenced.
[3] Because this question was asked on cross-examination, Bunting was not required to make an offer of proof to preserve the error for review. See Evid.R. 103(A)(2).